

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AMERICAN HERITAGE LIFE　§
INSURANCE COMPANY,　　　§
　　　　　　　　　　　　　§
　　　Plaintiff,　　　　　§
　　　　　　　　　　　　　§
v.　　　　　　　　　　　　§　Case No.: 3:17-cv-698-J-32MCR
　　　　　　　　　　　　　§
NEW ENGLAND BENEFITS　　 §
CONNECT, LLC,　　　　　　§
　　　　　　　　　　　　　§
　　　Defendant.

## COMPLAINT

Plaintiff, American Heritage Life Insurance Company ("AHL") files this Complaint against Defendant, New England Benefits Connect, LLC ("NEBC"), and states:

### I. PARTIES

1. **Plaintiff.** AHL is an insurance company incorporated in Florida with its principal place of business in Jacksonville, Florida.

2. **Defendant.** NEBC is a Massachusetts limited liability company with its principal place of business at 301 Newbury Street, Suite 112, Danvers, Massachusetts 01923, and its members are citizens of Massachusetts. NEBC may be served with citation by serving its registered agent, Shari Geissler, at 301 Newbury Street, Suite 112, Danvers, Massachusetts 01923.

## II. JURISDICTION AND VENUE

3. **Jurisdiction.** This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332 because AHL and NEBC are citizens of different states, and as set forth below, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

4. **Venue.** This district is an appropriate venue pursuant to 28 U.S.C. § 1391(b)(2) and because the parties contractually agreed to venue in this district.

## III. FACTS

### A. AHL Voluntary Benefits Products

5. AHL issues supplemental life, accident, critical illness, and disability insurance products that, among other prospects, are marketed to employers to be offered to their employees as part of their welfare benefit plans, with premiums typically paid by payroll deduction.

6. These types of workplace products offered by AHL are commonly considered "voluntary benefits," inasmuch as the employers typically decide whether the AHL products can be marketed to the workplace employees, and if so, the employees typically decide whether to apply or enroll for such products given that premiums are generally paid by the employees, albeit through payroll deduction.

7. AHL markets the voluntary benefits products under the marketing name "Allstate Benefits."

8. AHL markets the voluntary benefits products through its independent agent and exclusive agent sales channels. NEBC is an independent agent.

### B. The Agency Agreement

9. By Agent Agreement, effective January 29, 2015, NEBC entered into agent contract no. 8K0F0 with AHL. As set forth in the Agent Agreement, AHL appointed NEBC as an insurance producer to solicit, procure, and transmit to AHL applications for insurance issued by AHL and to perform such other functions as may be reasonably required by AHL and, in exchange, AHL agreed to compensate NEBC with payment of commissions and/or commission advances on insurance policies issued by AHL pursuant to applications procured by it.

10. The Agent Agreement provides no compensation for premiums on insurance policies issued pursuant to applications procured by other producers, although such other producers may elect to share a percentage of such commission, and in all cases where the claim to compensation is disputed or questioned, the decision of AHL is binding and conclusive. Further, the Agent Agreement expressly disavows any claim for compensation for having introduced or brought to the attention of AHL any business opportunity, except under a written agreement with AHL to pay such compensation, signed on behalf of AHL by a vice-president or higher officer of AHL.

11. Under the Agent Agreement, NEBC acted as an independent contractor for all purposes.

12. The Agent Agreement includes the following mandatory forum selection clause:

> This Agreement and the relationship of the parties shall be governed by the laws of the State of Florida applicable to agreements executed and performed within the State of Florida and without giving effect to any rules for conflicts of laws. The parties further agree and acknowledge that in the negotiations leading up to the execution of this Agreement and the performance of this Agreement they are purposefully availing themselves of the benefits and laws of the State of Florida and as such the parties hereby consent that they are subject to personal jurisdiction within the State of Florida as to any dispute <u>arising out of or related to the inception or performance of this Agreement</u>, and further hereby waive their right to contest the exercise of personal jurisdiction over them within the State of Florida.
>
> The parties further agree that in any dispute arising out of or related in any way to the solicitation, negotiation, inception or performance of this Agreement (whether the dispute is couched in terms of contractual, statutory, or common law grounds) said dispute <u>shall be exclusively resolved by a Court of competent jurisdiction within the State of Florida and specifically located within the venue of Duval County, Florida and the parties agree that in the event any claim, action, lawsuit or other proceeding is filed in a forum other than one located in the State of Florida, County of Duval, said claim, action, lawsuit or other proceeding shall be dismissed, transferred or abated and the dispute shall be pursued in an appropriate forum located within the State of Florida, County of Duval</u>.

### C. City of Boston Account

13. Based on information and belief, Hubbard & Preston Insurance Brokerage, Inc. ("Hubbard & Preston") was the approved vendor for the City of Boston and authorized by the City to solicit its employees for certain voluntary benefits products.

14. Based on information and belief, Hubbard & Preston entered into an agreement with NEBC to sell voluntary benefits products to City employees in exchange for a percentage of the earned commissions on the account.

15. In late 2014, Hubbard & Preston and NEBC solicited on behalf of the City of Boston and received proposals from many insurance companies, including from AHL, for voluntary benefits products for eligible City employees. AHL submitted several proposals to the City at the request of NEBC.

16. The City of Boston selected the voluntary benefits products offered by AHL.

17. AHL began issuing insurance certificates, effective April 1, 2015, to certain employees of the City of Boston under group voluntary policies offering accident and disability coverage, which replaced group policies issued by other carriers.

18. Doug Snowman, President of Hubbard & Preston, was the agent of record on the City of Boston account, and he designated NEBC as servicing agent on

the account. Hubbard & Preston and NEBC reportedly agreed to split commissions on the account and, over time, AHL was instructed to pay to NEBC varying percentages of the earned commissions on the AHL voluntary benefits products issued to the City employees.

19. In March 2016, based on information and belief, the City of Boston sent a cease and desist letter to Hubbard & Preston and/or NEBC precluding NEBC from transacting business with City of Boston employees for the sale of any insurance products inasmuch as NEBC was not an approved vendor, and Hubbard & Preston, as the approved vendor, was not authorized to engage NEBC without consent of the City.

20. Like many business relationships, Hubbard & Preston and NEBC began experiencing a strain on their business relationship. In March 2016, Hubbard & Preston instructed AHL to cease paying commissions to NEBC. AHL honored the request, and the commissions were re-directed to Hubbard & Preston at its request.

21. In April 2017, Hubbard & Preston brought to the attention of AHL that a discrepancy existed between the insurance certificates issued to certain of the City employees, namely a group of those who had accident coverage with the prior insurance carrier, and one of the proposals submitted by AHL in 2015. Although NEBC and Hubbard & Preston clearly could have identified the clerical error that caused the discrepancy in the proposal in 2015, AHL nonetheless agreed to honor the

proposal that essentially provided those City employees with two units of accident coverage for the price of one unit.

### D. NEBC Demand

22. NEBC has made demand upon AHL for alleged commissions totaling close to $10,000,000, contending that the City's decision to ban NEBC from soliciting insurance to its employees or from becoming an approved vendor, the mistake in one of AHL's requests for proposal, the deterioration of NEBC's business relationship with Hubbard & Preston and/or the City, and AHL's removal of NEBC as servicing agent on the City of Boston account irreparably harmed NEBC, thus depriving it of, and entitling it to, past and future commissions and excusing it from repaying commission advances to AHL. AHL disputes the allegations.

## IV. CAUSE OF ACTION

23. **Declaratory Judgment.** Pursuant to 28 U.S.C. § 2201, AHL requests the Court to grant declaratory judgment relief, and to declare the rights of the parties under the Agent Agreement. AHL seeks an adjudication that it has no obligation or liability under the Agent Agreement to pay such commissions to NEBC. AHL also seeks an adjudication that it has no obligation or liability to NEBC for commissions or compensation on policies not procured by NEBC, commissions or compensation on policies issued pursuant to applications procured by other agents or brokers, commissions or compensation for NEBC having introduced or brought to the

attention of AHL any business opportunity, and commissions or compensation for the City of Boston account, and that AHL's decision to terminate NEBC as servicing agent on the City of Boston account is binding and conclusive.

## V. PRAYER FOR RELIEF

22. **Prayer.** AHL requests the following relief:

(a) That NEBC be served with summons and the complaint and be required to answer in the time and manner prescribed by law;

(b) That the Court grant the declaratory judgment requested above; and

(c) That AHL have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

*[signature block on next page]*

Dated: June 19, 2017

Respectfully submitted,

*/s/ James N. Floyd*

**LESLIE A. WICKES, ESQ.**
Florida Bar No. 973963
leslie.wickes@arlaw.com
**JAMES N. FLOYD, JR., ESQ.**
Florida Bar No.114216
james.floyd@arlaw.com
Adams and Reese LLP
501 Riverside Avenue, 7th Floor
Jacksonville, FL 32202
904-355-1700
904-355-1797 (fax)

and

Andrew G. Jubinsky, *pro hac vice* to be filed
Texas Bar No. 11043000
andy.jubinsky@figdav.com
Ryan K. McComber, *pro hac vice* to be filed
Texas Bar No. 24041428
ryan.mccomber@figdav.com
**FIGARI + DAVENPORT, L.L.P.**
901 Main Street, Suite 3400
Dallas, Texas 75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

ATTORNEYS FOR PLAINTIFF